1
2
3
4
5

ROBERT T. TANG, Esq., SBN 296544
255 N. Market St., Ste. 244
San Jose, CA 95110
(408) 816-8098
robert@roberttlaw.org

Attorney for Plaintiff,
Fast Mart, Inc., a California corporation.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **FAST MART, INC. D/B/A FAST MART,** **a California corporation,** | Case Number: |
| | |
| Plaintiff, | **COMPLAINT FOR VIOLATION** **OF CIVIL RIGHTS** |
| | (42 U.S.C. § 1983 – Procedural Due |
| v. | Process) |
| **CITY OF SAN JOSE, a municipal corporation;** **and DOES 1-50,** | |
| | DEMAND FOR JURY TRIAL |
| Defendants. | |

## I.  PARTIES

1. Plaintiff, Fast Mart, Inc., a California corporation, D/B/A Fast Mart ("Plaintiff") owns and operates a small convenience market located at 1484 S. White Road, San José, California (the "Property"). Fast Mart, Inc. is the sole named Plaintiff and the holder of the entitlement and reliance interest at issue. Allegations concerning Jitender Singh Grewal, Plaintiff's sole shareholder and operator, are pleaded only to establish Plaintiff's reliance, causation, damages, and investment-backed expectations, and to demonstrate the concrete injuries inflicted by the City's procedural violations, not to assert a separate or duplicative individual claim.

2. Defendant, City of San José ("City"), is a municipal corporation and charter city organized under the laws of the State of California. The City, through its governing bodies, agents, and employees, enforces the San José Municipal Code and administers land-use regulations, including Conditional Use Permits. The San José City Council is the City's final policymaking authority for CUP appeals and related land-use decisions, and its actions constitute official policy of the City. The City is a "person" within the meaning of 42 U.S.C. § 1983 and is sued directly under *Monell v. Department of Social Services*, 436 U.S.

3. Defendants DOES 1–50 are City officials, employees, agents, or other persons whose identities are presently unknown or not yet formally named, who participated in, directed, influenced, ratified, or failed to prevent the constitutional violations alleged herein. These include individuals acting under color of state law, including known actors such as Councilmember Peter Ortiz and his Chief of Staff, whose conduct is described in this Complaint. Plaintiff reserves the right to amend this Complaint to substitute named defendants for DOES 1–50 or to assert individual-capacity claims as discovery reveals.

4. Reservation of Rights; Municipal Liability Based on Final Policymaking Authority: Plaintiff proceeds at this time against the City of San José based on the City Council's final policymaking actions and resulting municipal liability. Nothing herein shall be construed as a waiver of Plaintiff's right to pursue claims against additional individuals or entities, including City officials or private actors acting in concert with the City under color of state law, whose identities or roles are revealed through discovery or otherwise permitted by law.

## II.    JURISDICTION

5.  This Court has original jurisdiction under 28 U.S.C. § 1331 and 28 U.S.C. § 1343 because Plaintiff asserts claims arising under the Constitution and laws of the United States. Specifically, Plaintiff brings this action under 42 U.S.C. § 1983 to redress the deprivation of rights secured by the Fourteenth Amendment (procedural due process). The Court has authority to grant declaratory relief under 28 U.S.C. §§ 2201–2202.

## III.     VENUE

6.  Venue is proper in the Northern District of California pursuant to 28 U.S.C. § 1391(b) because the events giving rise to Plaintiff's claims occurred in this District. Defendant City of San José is a public entity located in this District.

## IV.     INTRADISTRICT ASSIGNMENT

7.  The relevant acts took place in Santa Clara County, California. Intra-district assignment to the San José Division is appropriate because the action arises from events in Santa Clara County.

## V.     STATEMENT OF FACTS

8.  This civil rights action arises from a completed constitutional injury inflicted by the City of San José when it nullified an approved land-use entitlement through a procedurally unlawful exercise of final municipal power. The City, acting through its City Council, extinguished Plaintiff's entitlement and deprived Plaintiff of property rights without the fair procedure guaranteed by the Due Process Clause of the Fourteenth Amendment. The injury occurred at the moment of the City Council's ultra vires reversal of Plaintiff's permit, and it exists independently of any state-law review mechanism or remedy.

9. This action does not seek review of land-use discretion, zoning policy, or the substantive correctness of a Conditional Use Permit determination. It is not an appeal of the City's discretionary judgment on planning matters. Rather, this action challenges whether the City's highest officials followed the minimum procedural safeguards that due process of law requires. The question presented is one of constitutional procedure: whether the process by which the City Council nullified Plaintiff's existing entitlement comported with the Due Process Clause and 42 U.S.C. § 1983. Plaintiff alleges it did not.

10. Plaintiff Fast Mart, Inc. owns and operates a longstanding neighborhood convenience store in San José that historically and lawfully sold alcoholic beverages for off-site consumption pursuant to a grandfathered, lawful nonconforming use. That use was never abandoned, terminated, or extinguished through any formal determination, hearing, or findings, and therefore constitutes a vested property right under California law, giving Plaintiff a legitimate claim of entitlement to continue the use as a matter of right. Years earlier, a prior owner (not Plaintiff's immediate predecessor) lost the ABC license associated with the premises. When Plaintiff's predecessor later sought to obtain a new ABC license, ABC directed him to the City. The City, in writing, required that a new Conditional Use Permit ("CUP") be obtained. Plaintiff and its predecessor complied with the City's directive and pursued the CUP process. After full administrative proceedings, the Planning Commission approved the CUP, finding that all applicable criteria were satisfied. Property interests protected by the Fourteenth Amendment arise from state and local law that secure claims of entitlement to specific benefits. Here, Plaintiff possessed dual, constitutionally protected property interests—the unextinguished nonconforming use and the duly approved CUP.

The City Council later nullified those vested rights through a procedurally defective reversal, resulting in a completed deprivation of property without due process of law.

11. Acting as the City's final decision-making authority, the City Council convened a hearing on an appeal of the Planning Commission's decision and, on January 23, 2024, voted to reverse the approved CUP. The process leading to that reversal was fundamentally unfair and procedurally irregular. The City Council proceeded on one or more appeals that failed to comply with mandatory City procedures for such appeals. For example, upon information and belief, the appeal to the Council was untimely and/or filed without satisfying the City's code requirements (such as standing and payment of fees), meaning the Council had no lawful jurisdiction to hear it. Nevertheless, the Council accepted and heard the defective appeal, exceeding the limits of its authority. During the Council's hearing, the Council failed to disclose or consider material facts and allowed new adverse allegations to be raised against Plaintiff's project without any prior notice to Plaintiff. City Councilmembers and opponents introduced purported grounds for revocation that had never been aired in the Planning Commission proceedings or disclosed beforehand, depriving Plaintiff of any meaningful opportunity to prepare a defense. Plaintiff was thus ambushed with new claims at the hearing and was not given a fair chance to know the allegations in advance or to respond meaningfully. The Council's proceedings were further tainted by political influence and bias: on information and belief, several Councilmembers had been lobbied by community activists or competitors opposed to Plaintiff's business and did not disclose these ex parte communications on the record. An impartial decisionmaker is a fundamental requirement of due process, yet the circumstances here demonstrate a distortion of the typical neutral process. The

cumulative effect of these defects was a hearing lacking the neutrality, notice, and basic fairness that the Due Process Clause requires. By voiding Plaintiff's entitlement through this procedurally improper and politically driven process, the City Council violated Plaintiff's right to procedural due process.

12. City Council's January 23, 2024 vote was the final word of the City with respect to Plaintiff's CUP and property rights. No further administrative review or appeal within the City was available to Plaintiff after the Council's decision. At that moment, Plaintiff's protected property interests in the grandfathered use and the approved CUP were extinguished by the City's action, and the constitutional deprivation was complete. Plaintiff's claim is ripe for review because the City's decision is final and the due process violation occurred when that final decision was made without fair procedure. Plaintiff is not required to pursue any state judicial remedy (such as a state court writ of mandate) before seeking relief in this Court. See *Patsy v. Bd. of Regents*, 457 U.S. 496 (1982); *Felder v. Casey*, 487 U.S. 131 (1988). It is well settled that exhaustion of state remedies is not a prerequisite to a § 1983 civil rights action for denial of due process. Plaintiff accordingly brings this action directly under 42 U.S.C. § 1983 at law and in equity to remedy the completed violation of its Fourteenth Amendment rights.

13. Longstanding nonconforming use: The commercial property located at 1484 S. White Road in San José, California has long operated as a neighborhood market selling groceries and alcoholic beverages for off-premises consumption. Under prior ownership (including when the store was known as "Vista Liquor"), the property lawfully sold beer, wine, and other alcoholic beverages for many years. This alcohol use predated current

zoning and regulatory restrictions and therefore constituted a lawful nonconforming (grandfathered) land-use entitlement under City law.

14. Temporary cessation due to State licensing issues: Alcohol sales at the property temporarily ceased following an unrelated California Department of Alcoholic Beverage Control ("ABC") license suspension affecting a prior owner in or around 2018 and court case was settled in April 2020. That suspension resulted from alleged license violations by the prior operator and did not constitute an intentional abandonment of the land-use entitlement.

15. No formal termination or abandonment: At no time did the City of San José issue a formal determination that the property's historical off-sale alcohol use had been abandoned or terminated. The City never conducted an abandonment or revocation hearing, never provided notice, and never adopted findings declaring the alcohol-sales entitlement discontinued. Absent such due process, the grandfathered alcohol-use entitlement remained intact by operation of law.

16. Continuous good-faith efforts to preserve the right: Successive owners, including Plaintiff's predecessor and later Plaintiff, undertook continuous, good-faith efforts to lawfully restore alcohol sales at the property. Any period of non-use resulted from regulatory barriers and compliance efforts, not from a voluntary or intentional relinquishment of the right.

17. Independent source of property interest: These facts establish that Plaintiff's interest in alcohol sales at the property arises independently from the CUP process and is rooted in a longstanding lawful use that was never properly extinguished.

18. The City's refusal to recognize grandfathered rights and written directive requiring a CUP: Notwithstanding the existing nonconforming entitlement, City planning staff expressly advised Plaintiff's predecessor in writing—and later in July 2020 confirmed the same position in writing to Plaintiff—that the sale of any alcoholic beverages at the site, including beer and wine, required a new Conditional Use Permit ("CUP"). This written directive, issued by City employees acting within the scope of their official duties, communicated the City's position that alcohol sales could not lawfully resume at the property without a CUP, and the City refused to recognize the historical nonconforming use absent compliance with this new permit process. Plaintiff and his predecessor relied on this written instruction in proceeding down the City-mandated permitting path.

19. Plaintiff's acquisition and reasonable reliance: Plaintiff acquired and began operating the business now known as Fast Mart Inc with the understanding that the property retained the right to sell alcohol, subject to regulatory compliance. Based on the property's history and the absence of any lawful termination of the nonconforming use, Plaintiff reasonably believed that the alcohol-sales entitlement remained valid.

20. The City's treatment of the application as "amended" while charging full CUP fees: After directing Plaintiff and his predecessor to pursue a CUP, the City later processed the application as an "amended" CUP, rather than as an entirely new land-use entitlement. Despite this designation, the City nevertheless required Plaintiff to pay the full CUP application fee, as if applying for a new permit. At the same time, the City exempted the project from environmental review, reflecting the City's determination that the application did not involve a new or intensified use. The City's own mixed treatment of the application—labeling it amended, exempting it from environmental study, yet

COMPLAINT FOR VIOLATION OF CIVIL RIGHTS                                      8

charging full fees—demonstrates that the City itself recognized the continuity of the prior alcohol-use entitlement, even while refusing to formally acknowledge it. This inconsistency further supports Plaintiff's reliance interests and the existence of preexisting property rights.

21. The City-mandated permitting path: In direct reliance on the City's instruction, Plaintiff's predecessor filed a CUP application on or about July 16, 2020. After Plaintiff purchased the business in mid-2022, and with the City's knowledge, Plaintiff continued along the same City-directed path. Plaintiff formally submitted his CUP application on January 23, 2023, fully complying with the requirements the City imposed.

22. No waiver of historical rights: Plaintiff's pursuit of a CUP was not a voluntary waiver or abandonment of the property's longstanding nonconforming alcohol-use rights. It was a compliance step compelled by the City's regulatory position. Plaintiff and his predecessor acted in good faith and relied on the City's representations.

23. Dual source of protected property interest: By the time the City considered Plaintiff's permit application in 2023, Plaintiff possessed constitutionally protected property interests arising from two independent sources:(a) Existing Lawful Use Interest. The Property carried a longstanding lawful alcohol-related use status that had not been lawfully extinguished. A recognized lawful use constitutes a protected property interest that may not be withdrawn or nullified without constitutionally adequate procedures. *See, e.g.,* Village of Euclid v. Ambler Realty Co., 272 U.S. 365, 386 (1926); Sinaloa Lake Owners Ass'n v. City of Simi Valley, 882 F.2d 1398, 1405 (9th Cir. 1989).(b) Entitlement Based on Objective Permit Standards: Independently, Plaintiff held a

legitimate claim of entitlement to permit approval because the City required compliance with defined, objective criteria and applied those standards through a formal adjudicatory process. Where approval is conditioned on satisfaction of objective standards, an applicant who meets those standards acquires a protected property interest that cannot be rescinded through procedurally defective means. *See, e.g.,* Bateson v. Geisse, 857 F.2d 1300, 1305–06 (9th Cir. 1988); Gerhart v. Lake County, 637 F.3d 1013, 1019–20 (9th Cir. 2011); Board of Regents v. Roth, 408 U.S. 564, 577 (1972).

24. Due process implications of government-induced deprivation. It is fundamentally unfair—and constitutionally impermissible—for a municipality to require an applicant to proceed through a government-mandated permitting process and then use that same process to deny or nullify an entitlement without adherence to lawful procedures and basic safeguards. Where the government itself creates the procedural framework that gives rise to a protected property interest, it may not later deprive that interest through arbitrary or procedurally defective means. *See* Bateson v. Geisse, 857 F.2d 1300, 1305–06 (9th Cir. 1988); Logan v. Zimmerman Brush Co., 455 U.S. 422, 436 (1982). The City's conduct here created the conditions for the deprivation that ultimately occurred and therefore implicates the core protections of the Due Process Clause.

25. Full compliance with city-mandated permitting process: Plaintiff submitted a complete Conditional Use Permit ("CUP") application and complied with all procedural and substantive requirements imposed by the City of San José, including required community outreach and a duly noticed public hearing before the San José Planning Commission. From initiation of the application through the conclusion of the administrative

proceedings, the City's Planning Department consistently recommended approval of the CUP, finding that the project satisfied all applicable standards under the Municipal Code.

26. The City findings confirmed satisfaction of all objective approval criteria: Planning staff affirmatively found that each required finding was satisfied and recommended approval. City planning staff evaluated Plaintiff's CUP application under the specific approval criteria set forth in the San José Municipal Code, including zoning consistency, parking, separation requirements, operational standards, and public safety considerations. The San José Police Department took a neutral position, and staff confirmed that the site was not located in an over-concentrated census tract for off-sale alcohol licenses.

27. The Planning Commission approval following quasi-judicial hearing: On September 27, 2023, after a duly noticed public hearing, the San José Planning Commission—acting in a quasi-judicial capacity—voted 8–2 to approve Plaintiff's CUP. The Commission adopted findings on the record and approved the permit subject to standard conditions.

28. Vested entitlement under objective, mandatory standards: Under settled Ninth Circuit law, a constitutionally protected property interest arises where a land-use permit is governed by objective, mandatory criteria, such that the issuing authority lacks discretion to deny approval once those criteria are satisfied. The City's Municipal Code operates in precisely that manner: when the required findings are made and the enumerated standards are met, approval of a CUP is mandatory, not discretionary. Plaintiff satisfied every objective approval criterion. Following a noticed evidentiary hearing, the Planning Commission exercised the City's discretionary land-use judgment in Plaintiff's favor, voting 8–2 to approve the CUP and adopting the required findings. At that moment,

Plaintiff's interest vested as a matter of law. Plaintiff no longer held a mere expectation, but a legitimate claim of entitlement to the permit and the authorized use of its property, protected by the Due Process Clause of the Fourteenth Amendment. See *Bateson v. Geisse*, 857 F.2d 1300, 1305–06 (9th Cir. 1988); *Gerhart v. Lake County*, 637 F.3d 1013, 1019–20 (9th Cir. 2011); *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972).

29. Appeal procedures do not negate a vested property interest: The existence of a post-approval appeal period does not negate the constitutionally protected property interest created by the Planning Commission's approval. Accordingly, once the Planning Commission approved Plaintiff's CUP under mandatory criteria, Plaintiff's entitlement vested, subject only to a fair and lawful appeal process consistent with due process. The Ninth Circuit has made clear that "the existence of procedures for revocation does not eliminate the property interest," and that a reasonable expectation of entitlement may arise even where additional procedural steps remain. *Crown Point Dev., Inc. v. City of Sun Valley*, 506 F.3d 851, 856 (9th Cir. 2007); *Gerhart v. Lake County*, 637 F.3d 1013, 1020 (9th Cir. 2011). An appeal is merely a procedural mechanism for review—it does not retroactively erase an entitlement once objective criteria have been satisfied. Other courts are in accord. See *Triomphe Investors v. City of Northwood*, 49 F.3d 198, 203 (6th Cir. 1995) (permit subject to appeal may still confer a property interest); *Barry v. Barchi*, 443 U.S. 55, 64–65 (1979) (revocable licenses may constitute protected property interests).

30. Political animus and prejudgment by a sitting councilmember: Due process is violated not only by actual bias, but by procedures that present a constitutionally intolerable probability of bias or predetermination. A tribunal must be impartial in fact and

appearance; when decisionmakers prejudge the outcome or coordinate votes outside the adjudicative process, the resulting deprivation fails constitutional scrutiny. Councilmember Peter Ortiz assumed office on January 1, 2023. Shortly thereafter, Plaintiff and his wife met with Councilmember Ortiz at City Hall to discuss Plaintiff's pending CUP application. As soon as Councilmember Ortiz entered the room, he made a remark to Plaintiff and his wife to the effect of, *"Oh, you guys helped my opponent—and see, I'm still here."* This statement referred to Plaintiff's prior political support for Nora Campos, who had run against Peter Ortiz for the District 5 Council seat. (Ms. Campos is also the sister of Plaintiff's land-use consultant.) Plaintiff had no knowledge of any personal or political hostility between Councilmember Ortiz and Ms. Campos. Nonetheless, Councilmember Ortiz immediately associated Plaintiff with that rivalry and directed animus toward Plaintiff and his wife. From that moment forward, Councilmember Ortiz opposed Plaintiff's CUP—not as a neutral decisionmaker, but as an adversary who had already prejudged the outcome.

31. Role of Angel Madero acting under color of state law: At all relevant times, Ángel Madero served as Chief of Staff to Councilmember Peter Ortiz in the Office of Councilmember Ortiz (East San José, District 5). Mr. Madero acted within the scope of his official duties and as an authorized agent of Councilmember Ortiz. Mr. Madero was the primary operative through whom Councilmember Ortiz monitored, opposed, and influenced the processing of Plaintiff's CUP. Mr. Madero's actions were undertaken on behalf of, at the direction of, or with the knowledge and approval of Councilmember Ortiz, and therefore constitute actions taken under color of state law attributable to the City and its final policymaking authority (the Council).

32. Pre-hearing political opposition and pressure on planning staff: On July 11, 2023 (over two months before the scheduled Planning Commission hearing of September 27, 2023), Mr. Madero sent another email to Planning staff, copying Councilmember Ortiz, stating in substance: *"Councilmember Ortiz and many others are very opposed to the approval of this permit. Please provide an update."* This email establishes that Councilmember Ortiz personally opposed Plaintiff's CUP well before the Planning Commission had considered or ruled on the application. Despite this behind-the-scenes pressure, the Planning Commission went on to approve Plaintiff's CUP on September 27, 2023, by an 8–2 vote, as noted.

33. Monitoring and steering the path to city council review: In the days surrounding the Planning Commission hearing, Councilmember Ortiz's office closely monitored whether the matter could be elevated to the City Council. On September 22, 2023 (the Friday *before* the Commission hearing), at 4:22 PM, Madero emailed Planning staff to ask whether, after Planning Commission review, the CUP would be coming before the City Council—this despite staff previously explaining that the Planning Commission is the final decision-maker unless appeals are filed. Thirteen minutes later (4:35 PM), Planning staff responded and reiterated that the Planning Commission's decision would be final, and City Council involvement would occur only if an appeal was filed by a qualified party within the allowed time. In other words, absent a proper appeal, the permit would become final and effective with the Commission's approval.

34. Active surveillance of appeals before any were filed: Over the next week, Councilmember Ortiz's office kept a drumbeat of inquiries on the status of any appeals of the CUP approval. On September 25, 2023, Madero asked Planning staff about the appeal

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

process, including who is eligible to file appeals. On September 29, 2023 (two days after the Commission approved the CUP), Madero asked Planning whether any appeals had been turned in. On October 2, 2023, he followed up *twice*: at 9:33 AM asking if any appeals existed, and again at 11:15 AM, to which Planning replied that no appeals had been received as of that time. These repeated inquiries demonstrate that Councilmember Ortiz's office was actively tracking the appeal window before any appeals even existed, reflecting an unusual level of political involvement in what is supposed to be a quasi-judicial, citizen-driven appeal process.

35. Defective and fraudulent appeals accepted in violation of mandatory City rules: As the ten-day appeal period drew to a close, three appeal submissions were filed at the last moment, immediately prior to the expiration of the filing deadline. One appeal was submitted by the owner of a neighboring business. Two additional appeal forms were submitted in the names of other individuals. City staff accepted all three filings and treated them as valid for purposes of triggering City Council review. Subsequent investigation revealed that the latter two appeals were irregular and were submitted without the knowledge or authorization of the purported appellants. Internal City correspondence contemporaneous with the filings reflected active political opposition to the approved permit, including statements that "Councilmember Peter Ortiz and many others are very opposed to the approval of this permit." Despite the facial irregularities of the submissions and the absence of required verification, the City processed the appeals as valid, thereby allowing procedurally defective filings to override the finality of the Planning Commission's approval.

36. Acceptance of facially defective appeals in violation of mandatory City procedures: City law, as codified in the San José Municipal Code and the City's own appeal forms, imposes strict, mandatory prerequisites for a valid appeal of a Planning Commission decision, including limits on who has standing to appeal, signature and verification requirements, submission of required materials, and payment of a filing fee, all within a defined ten-day period. None of the three appeal submissions satisfied these mandatory requirements. In particular, no appellant included the required assessor's parcel map of the subject site with the appeal filing, and at least one appellant lacked the specific aggrieved interest required for standing. Notwithstanding these facial defects, Planning staff accepted the appeals without public clarification of their incompleteness and treated them as valid for purposes of triggering City Council review. By accepting and processing appeals that failed to comply with mandatory, non-discretionary procedures, the City violated its own governing rules and deprived Plaintiff of the finality and vested entitlement that otherwise attached to the Planning Commission's approval. Because no valid appeal existed, the City Council lacked jurisdiction under the Municipal Code to conduct appellate review, rendering its actions ultra vires and void ab initio.

37. Political pressure to "create" a council hearing despite defective appeals: Before any appeal was even perfected, and even as the appeal posture became procedurally confused (with withdrawn appeals, contested withdrawals, and questions of validity), Councilmember Ortiz's Chief of Staff continued to insist that the matter be brought to the City Council for a hearing. Emails show that Mr. Madero repeatedly communicated with Planning staff in October 2023, pushing for the CUP to be agendized for Council review notwithstanding the irregularities. It is undisputed that the Chief of Staff had no formal

role or authority in the appeal process under the Municipal Code—he was neither a decisionmaker nor a party—yet his involvement exerted influence over City staff's handling of the appeals. Political opposition or pressure cannot reintroduce discretion once an entitlement has vested. Thus, Plaintiff's constitutionally protected property interest existed independent of, and notwithstanding, these political efforts to override it.

38. Withdrawn appeals and arbitrary preservation of jurisdiction: The San José Municipal Code permits an appellant to withdraw an appeal and provides that a Planning Commission decision is suspended only while an appeal remains pending. The Code also makes clear that once an appeal has been duly accepted, the initial decision is suspended only so long as the appeal remains pending and regains force and effect if the appeal is withdrawn prior to the appeal hearing. SJMC § 20.100.260. Here, all three appellants submitted written withdrawals expressly confirming that they no longer wished to pursue appellate review. Despite the absence of any active appeal, the City asserted—based solely on the timing of the withdrawals—that the City Council could proceed anyway. Nothing in the Municipal Code authorizes the City to compel abandoned appeals or to preserve appellate jurisdiction once no appellant seeks review. By treating withdrawn appeals as operative, the City departed from its mandatory procedures and arbitrarily stripped Plaintiff of the finality that had already attached to the Planning Commission's approval City steps to finalize and record the approved CUP. Consistent with this framework, Planning Department staff initially acknowledged the withdrawals, confirmed that the appeals would not proceed, and took administrative steps to finalize and record the approved CUP. The City's later reversal—treating abandoned appeals as still operative solely because the appeal period had expired—was unsupported by any

ordinance, inconsistent with the City's own prior actions, and had the effect of depriving Plaintiff of the finality that City law otherwise required. Because no valid appeal existed, the City Council lacked jurisdiction under the Municipal Code to conduct appellate review, rendering its actions ultra vires and void ab initio.

39. The City direction to finalize and record the approved permit: On October 20, 2023, after planning staff received and confirmed withdrawal communications from all appellants, John Tu, Division Manager for Development Review in the Planning Division, expressly directed that the project be treated as finalized and recorded. In an internal email to Cameron Gee, the assigned City planner, Tu instructed that the Council office be informed that "the project appeal has been withdrawn and therefore, will be finalized and recorded," and further directed coordination with administrative staff to record the permit. Later that same day, Gee relayed this directive to Jennifer Provedor, Senior Supervisor in the Planning Division's administration unit, stating that the appeal requests had been withdrawn, that staff had accepted the withdrawals, and that "the resolution can now be processed as an approved permit". Provedor responded on October 20, 2023, confirming that she would "proceed with recording the permit," reflecting the City's contemporaneous understanding that the approval had cleared the appeal process and entered the ministerial recording phase

40. Subsequent reversal of staff position regarding finality and recording: Within days of directing that the approval be finalized and recorded, Planning staff reversed their stated position and asserted that the matter would nevertheless proceed to City Council review. On October 23, 2023, Cameron Gee, the assigned City planner, informed the applicant that, after discussions with supervisors and attorneys, withdrawals received after the ten-

day appeal period could only be acted upon by the City Council at a public hearing, and that staff was therefore "required to bring this permit appeal to a City Council hearing," notwithstanding the prior acceptance of the withdrawals and steps taken toward recording. In subsequent correspondence on October 30, 2023, Gee advised Council staff that, despite earlier communications indicating the appeal had been withdrawn and the permit would be recorded, the City would proceed with scheduling a City Council hearing because the withdrawal requests were received after the appeal period. These communications marked a departure from Planning staff's earlier written direction that the approval had cleared the appeal process and entered the recording phase.

41. Withdrawal of all appeals, termination of jurisdiction, and unlawful reinitiation: Three appeals of the Planning Commission's September 27, 2023 approval of Plaintiff's Conditional Use Permit ("CUP") were timely filed within the ten-day appeal period on October 5 and October 6, 2023; after the appeal period expired, all three appellants voluntarily withdrew their appeals on or about October 16, 2023, at which point San José Municipal Code § 20.100.260 applied and the Planning Commission's decision regained force and effect, terminating appellate jurisdiction, yet notwithstanding that statutory finality, the City later reinitiated the appeal process based on an October 26, 2023 email purporting to continue one withdrawn appeal, in violation of San José Municipal Code § 20.100.250, which requires appeals to be filed within ten days of the decision and provides no authority to revive or refile an appeal after the deadline, rendering the City's actions ultra vires and procedurally unlawful, as courts consistently hold that appeal deadlines are jurisdictional and that agencies lack authority to entertain late or resurrected appeals once finality has attached (*Bowles v. Russell*, 551 U.S. 205, 214 (2007); *Pressler*

*v. Donald L. Bren Co.*, 32 Cal.3d 831, 837 (1982); *Palagin v. Paniagua Constr., Inc.*, 222 Cal.App.4th 124, 130–31 (2013); *Haight v. Catholic Healthcare West*, 602 F.3d 949, 954–55 (9th Cir. 2010)).

42. The situation became increasingly chaotic: One of the original appellants publicly alleged she had been "tricked" into signing the withdrawal (claiming a person misrepresented the document as something about street cleaning). Another appeal was anonymously "resurrected" by someone claiming to represent the original filer, but that attempt was later abandoned and City records note it as such. In short, by the time of the Council hearing, there was utter confusion over who, if anyone, was actually still appealing, and under what authority the Council was proceeding. This *procedurally incoherent* scenario — effectively a zombie appeal with no proper appellant — is the process by which Plaintiff's permit was taken up by the Council.

43. The City council hearing set and reset without jurisdiction or legal basis. Despite the absence of a valid, pending appeal and the resulting jurisdictional defects, the City nevertheless scheduled a City Council hearing on the CUP appeal. The matter was initially calendared for the afternoon of January 9, 2024, and was later rescheduled to an evening hearing on January 23, 2024. When Plaintiff inquired as to the reason for the change, City staff confirmed in internal emails that the rescheduling decision was made at the direction of the City Council solely for agenda-management reasons—specifically, because the January 9 agenda was "short," the item was the only land-use matter that day, and the Council preferred that it not be heard early in the afternoon, but instead be heard in the evening. Critically, these communications do not identify any ordinance, Municipal Code provision, procedural defect, or appellant request necessitating the rescheduling,

nor do they suggest that the change was required to cure any jurisdictional or notice issue. The hearing ultimately went forward notwithstanding the absence of a valid appeal capable of invoking the City Council's appellate authority. Under settled principles of administrative law, actions taken without jurisdiction or beyond the scope of delegated authority are ultra vires and void, not merely erroneous. By convening and conducting an appellate hearing in the absence of a valid appeal—and by doing so based solely on internal agenda preferences rather than any governing law—the City Council acted outside its lawful authority, depriving Plaintiff of the finality that had already attached to the Planning Commission's approval. Because no valid appeal existed, the City Council lacked jurisdiction under the Municipal Code to conduct appellate review, rendering its actions ultra vires and void ab initio.

44. Materially misleading staff presentation by omission: At the City Council hearing on January 23, 2024, City planning staff presented the CUP and the purported appeals to the Council. Staff did not disclose that all three appeals had been withdrawn prior to the hearing, nor did staff advise the Council that no appellant was actively pursuing appellate relief. As a result, the Council proceeded under the materially false premise that valid, pending appeals existed and required adjudication. This omission distorted the administrative record and deprived the City's final decisionmakers of accurate information regarding the procedural posture of the matter. By failing to disclose the withdrawals and by allowing the Council to act on appeals that were disavowed or withdrawn, the City deprived Plaintiff of a fair and lawful appellate process. The Council was never informed that, as a procedural matter, there was effectively nothing to decide,

a fact that—had it been disclosed—would have halted or fundamentally altered the proceedings.

45. Behind-the-scenes political coordination (business agenda formation): Additional evidence later surfaced indicating that Councilmember Ortiz's office actively coordinated with others on the City Council to engineer a united front against Plaintiff's CUP. For example, on October 13, 2023, Mr. Madero emailed other Council offices stating that a so-called "Business Agenda" (BA) stance was established as *Mayor + District 4 + District 5* "for" the CUP appeal — in effect, marshaling key votes in advance. That same day, he confirmed that Councilmember Ortiz requested outreach to other Councilmembers to join the BA against the CUP *before* the hearing. Such pre-hearing strategy sessions and bloc-forming indicate that the outcome was being orchestrated politically, rather than adjudicated impartially on the merits.

46. Pre-hearing strategy meeting: On January 16, 2024 (one week before the Council hearing), Mr. Madero scheduled a closed-door BA meeting with the Mayor and other Council offices specifically to discuss the "White Road CUP" appeal. This suggests that a majority of Council members (or a significant number) may have met privately to solidify their approach to Plaintiff's case, outside of the public hearing process. Such ex parte coordination raises serious due process concerns, as it undermines the requirement of an impartial tribunal and suggests the decision was preordained.

47. City Council action on January 23, 2024 demonstrated predetermination, bias, and procedural defects. At the January 23, 2024 hearing, the City Council proceeded on an unreliable procedural foundation and a materially distorted administrative record. The

Council relied on last-minute allegations and staff presentations that withheld critical

facts, including the withdrawal of all appeals, and advanced to a merit hearing without

first determining whether any valid appeal remained pending or whether appellate

jurisdiction had been properly invoked. The Council relied, in part, on a last-minute

"letter of allegations" submitted by a community member and on staff presentations that

omitted material facts, including the withdrawal of all appeals and person who sent "letter

of allegation" moved out of area and did not want to move forward with this appeal.

Despite these deficiencies, the Council advanced to a merit hearing without addressing

whether any valid appeal remained pending or whether jurisdiction had been properly

invoked. During the City Council hearing, one listed appellant stated on the record that

she had been tricked into signing the appeal and never intended to file it. Despite this

express disavowal, City staff did not correct the record, withdraw the appeal, or advise

the Council that it was invalid or abandoned. The Council nevertheless proceeded as

though a valid appeal existed, relying on a materially false procedural premise and

depriving Plaintiff of a fair proceeding.

48. The predetermined nature of the proceeding was evident from the City's own agenda

materials and staff presentation (Agenda Item 10.4; CP22-024 & ER22-187). The

Planning Department characterized the matter as an "appeal" and listed three appeals,

without disclosing that all appeals had been withdrawn. Staff did not analyze appeal

standing, completeness, or validity, and did not inform the Council that no operative

appeal remained pending, thereby presuming appellate jurisdiction without establishing

it.

49. At the same time, staff acknowledged that the appeal comments did not undermine any Planning Commission findings and that the project complied with the General Plan, Municipal Code, and City Council policies. The presentation did not reapply the CUP criteria, identify any ordinance violation, or evaluate Plaintiff's operational plan or mitigation measures. Instead, the structure and content of the presentation framed the hearing as a step toward a foreordained outcome, not a neutral quasi-judicial adjudication.

50. Councilmember Peter Ortiz assumed an active and adversarial role throughout the hearing. At the outset, he stated, *"I wanted to set the tone to deny the Conditional Use Permit."* He further emphasized a personal connection to the matter, stating, *"I've lived in Mount Pleasant… right next to this liquor store,"* and *"I was also an elected trustee of that community."* These statements and his questioning reflected a predetermined position, not the neutral posture required of a decisionmaker acting in a quasi-judicial capacity.

51. Multiple Councilmembers expressly echoed Ortiz's position, indicating that their votes were based on deference to his district representation rather than an independent evaluation of the evidentiary record or the Planning Commission's findings. Councilmember Foley stated, *"I defer to [Ortiz]… he knows the community."* Another Councilmember stated, *"I would be voting the same way… because of the council district being five… it's the respect for the councilmember than anything else."*

52. The hearing record reflects that the Council did not identify any violation of ordinance, rule, or permit condition by Plaintiff. There was no discussion of Plaintiff's compliance

COMPLAINT FOR VIOLATION OF CIVIL RIGHTS                                    24

history, operational plan, security measures, or proposed mitigation efforts. Instead, opposition was framed in generalized terms, including the statement by a Councilmember, *"I don't want to see another liquor store come into this neighborhood."* The decision was not tied to any failure to meet objective standards or to any code-based deficiency.

53. The record further shows that the unanimous vote was influenced by internal political pressure rather than independent deliberation. Some Councilmembers openly expressed discomfort with the outcome but nevertheless indicated they would vote to deny the permit out of deference or respect. One Councilmember stated, *"I have a lot of conflict in terms of being able to stay that direction,"* followed by, *"But I will vote this way out of respect."*

54. Notably, the Council never addressed or made findings on the threshold issue of appeal validity—namely, whether the withdrawn or defective appeals conferred jurisdiction to hear the matter at all. Instead, the Council proceeded directly to reversal and voted 11–0 to overturn the Planning Commission's approval and deny Plaintiff's CUP.

55. Denial of notice and meaningful opportunity to be heard: The process by which the Council reached its decision was fundamentally unfair. Plaintiff was effectively denied notice of the true issues and evidence to be considered. Material "evidence" (like the staff's revelation of an appellant's claim of trickery, or the last-minute opposition letter) was sprung at the hearing without prior disclosure, giving Plaintiff no meaningful opportunity to rebut it. The Council allowed unproven allegations to be aired publicly (impugning Plaintiff's process integrity) without providing Plaintiff a chance to

investigate or respond. The hearing had the trappings of a decision-making forum, but key facts were hidden and minds were already made up due to the political influences at play. It was, in substance, not a fair adjudicative hearing but a predetermined political act.

56. Predetermined outcome and post-denial boast: The day after the Council vote, on January 24, 2024, Mr. Madero (on behalf of Councilmember Ortiz) sent an email to community members stating: "On behalf of Councilmember Peter Ortiz, we want to share our thanks for your advocacy, which resulted in a unanimous vote against the approval of the Conditional Use Permit." In other words, Councilmember Ortiz's office openly thanked those who had opposed the permit and took credit for the outcome, confirming that the result was driven by advocacy (and orchestrated opposition) rather than an impartial evaluation of the facts. Additionally, on January 31, 2024, Mr. Madero inquired internally whether CUP appeal documents become part of the public record, reflecting a post-decision concern about what the paper trail might reveal regarding their tactics.

57. Completed constitutional deprivation: Through the above-described conduct – political interference, acceptance of defective appeals, concealment of material facts, reliance on secret or last-minute allegations, ignoring live exculpatory testimony at the hearing, misleading the final decisionmakers, and denying Plaintiff notice and a meaningful opportunity to be heard – the City of San José, acting through its City Council, deprived Plaintiff of his property without due process of law. The Council's action extinguished Plaintiff's previously approved CUP and, with it, Plaintiff's ability to lawfully resume alcohol sales at his business.

58. Predetermined outcome and denial of a fair hearing by the tribunal: In sum, the outcome was predetermined and achieved through a process that violated the fundamental due process requirement of a fair hearing from an impartial tribunal. Councilmember Ortiz's office had opposed the CUP from the start, engineered a path to City Council review, and then celebrated the denial as a victory of advocacy. The procedural "hearing" on January 23, 2024 was a mere formality—Plaintiff never stood a chance, as the decisive votes were influenced by undisclosed biases and extra-record lobbying. The Constitution requires a fair hearing before an impartial decisionmaker with notice and a meaningful opportunity to respond. Plaintiff did not receive that process.

59. Termination of vested entitlement and immediate economic impact: As a direct and proximate result of the City Council's final action on January 23, 2024, Plaintiff lost the approved CUP and thereby lost the ability to lawfully resume off-sale alcohol sales at his longstanding business. What had been a valid entitlement (vested by the Planning Commission's approval) was terminated. The market value of Plaintiff's business and property was immediately and severely diminished (a convenience store without the ability to sell alcohol is far less viable and less valuable, given that beer/wine sales were a significant component of its operations and customer draw).

60. Finality of deprivation and accrual of federal due process claim: Plaintiff's constitutional injury was complete and concrete at the moment of the Council's vote on January 23, 2024. Unlike a situation where further administrative remedies remain available, here the City Council was the final decisionmaker on the CUP appeal. There was no further administrative appeal or recourse within the City's processes. Plaintiff was not required to pursue state court writs or other remedies before suing under § 1983. The harm —

deprivation of a protected property interest without due process — is cognizable now and is properly before this Court.

61. Resulting economic losses and personal harm: In addition to the loss of the entitlement itself, Plaintiff has suffered economic harm (lost profits and business opportunities, expenses incurred, and reduction in property/business value), as well as the loss of enjoyment of his property and the frustration of months of effort and investment. Plaintiff and his family also suffered personal distress and reputational damage from the public airing of unfounded allegations in a skewed forum, which cast him and his project in a negative light unfairly.

62. No exhaustion requirement and ripeness of Federal § 1983 claim: Plaintiff notes that he was not required to pursue any further administrative or state judicial remedies (such as a state court writ of mandate) before bringing this § 1983 action. The Supreme Court has made clear that exhaustion of state remedies is generally not a prerequisite to a § 1983 claim for violation of federal rights. This principle holds especially true for procedural due process claims where, as here, the deprivation is caused by the operation of the state's own flawed procedure (as opposed to a random unauthorized act by a rogue official). Congress intended to provide a federal forum and "immediate access" to the courts for redress of constitutional deprivations, without forcing victims to first seek relief from the very government that harmed them. *See* Patsy, 457 U.S. at 501–07; *see also* Felder, 487 U.S. at 146–47 (state may not impose additional exhaustion or notice requirements for § 1983 suits). Accordingly, Plaintiff's claim is ripe and properly before this Court now.

## VI. CLAIMS

### FIRST CLAIM
### 42 U.S.C. § 1983 – Violation of Fourteenth Amendment Procedural Due Process

63. Plaintiff realleges and incorporates by reference each and every allegation in paragraphs 1 through 62, a though fully set forth herein.

64. Under color of state law: At all relevant times, Defendant City of San José (through its officials, including the City Council members and Council staff) acted under color of state law. The City Council's January 23, 2024 decision constituted an exercise of the City's governmental power, and the actions of Councilmember Ortiz and his Chief of Staff in influencing the process were undertaken as part of their official duties in the municipal government.

65. Deprivation of property interest: Plaintiff was deprived of a protected property interest – specifically, his entitlement to proceed with off-sale alcohol use pursuant to the approved CUP (and/or his grandfathered right to such use) – when the City Council nullified his CUP and denied him the ability to operate as previously allowed. This deprivation is concrete: Plaintiff's permit approval was rescinded and he can no longer engage in the alcohol-related business activity that the permit would have authorized.

66. Without due process of law: The deprivation of Plaintiff's property interest was accomplished without the procedural due process that is constitutionally required. Defendant's acts and omissions, as described in detail above, violated Plaintiff's right to notice and a meaningful opportunity to be heard before an impartial tribunal. Among other things: a. The City convened an appellate hearing and overturned Plaintiff's permit through procedures that were *not authorized by law* – including accepting and acting upon appeals that were invalid or withdrawn – thereby acting beyond its jurisdiction and

in arbitrary disregard of its own rules; b. The decisionmakers (City Council members) were not impartial. At least one Councilmember (Ortiz) had a personal/political stake and bias, and he, along with his staff, orchestrated opposition and pre-hearing strategy, depriving Plaintiff of an unbiased forum; c. Plaintiff was not given adequate notice of critical issues to be decided or of the evidence to be used against him. Material facts (like the appeal withdrawals) were concealed, and new accusations were introduced at the hearing without prior notice, leaving Plaintiff no meaningful chance to respond; d. The hearing itself was a sham: by the time it occurred, political pressure and private meetings had predetermined the outcome. The ostensible "public hearing" did not genuinely entertain Plaintiff's evidence with an open mind, as required by due process; e. The City Council provided no written findings addressing the procedural mess (such as why it had jurisdiction despite withdrawn appeals, or on what basis it could credit last-minute claims). The lack of reasoned decision-making and failure to adhere to adjudicative norms underscore the absence of a fair process.

67. Causation – official policy: The deprivation of Plaintiff's rights was caused by the City's official policy or custom, in that the City Council – the final policymaker for such land-use decisions – took the action that resulted in the due process violation. The Council's decision, and the manner in which it was reached, represent the official act of the City of San José. The City is therefore liable under *Monell* v. Department of Social Services, 436 U.S. 658 (1978), because an official decision by its final decision-making body caused the constitutional harm. Even if the conduct of certain individuals (Ortiz or staff) contributed to the wrongdoing, the City, through the Council, ratified or adopted those actions by using them as the basis for its final decision. A single decision by a municipal

body with final policymaking authority constitutes official policy for purposes of municipal liability under 42 U.S.C. § 1983.

68. No adequate state-law remedy and resulting injury: Plaintiff has suffered concrete and particularized injury as a direct result of Defendants' violation of procedural due process. The unlawful reversal of the approved Conditional Use Permit caused substantial economic harm to the business, including loss of operating income, diminution in the value of the permitted use, and significant out-of-pocket costs incurred in reliance on the approval, and deprived the enterprise of the lawful use and enjoyment of its property interest. These injuries arise from a completed constitutional violation by the City's final policymaking authority and are not redressable through ordinary state-law review procedures, which cannot remedy the denial of federal procedural due process itself or provide full compensatory relief. Accordingly, relief under 42 U.S.C. § 1983 is necessary to compensate the business for its economic losses and to provide appropriate equitable relief.

69. As a result of the City's actions, Plaintiff has sustained and continues to sustain damages. These include, but are not limited to: a) Economic Losses: The loss of the CUP has prevented Plaintiff from selling alcoholic beverages, which was a substantial revenue stream for his business. Plaintiff has lost past and future profits from the store's operations due to the inability to sell alcohol. The value of Plaintiff's business (and the associated goodwill) has been significantly reduced. Additionally, Plaintiff expended money on the CUP application process (fees, consultants, etc.) and on preparing for a business model that included alcohol sales – all of which investments are now rendered futile; b) Property Value Diminution: The market value of the real property at 1484 S.

White Road, San Jose, CA 95127, as well as the value of Plaintiff's leasehold or business interest, has been diminished because the permitted uses are now more restricted. A property with the right to off-sale alcohol is considerably more valuable than one without; by stripping that right, Defendant has effectively caused a diminution in property value; c) Out-of-Pocket Costs: Plaintiff incurred expenses in reliance on the City's processes, including application costs, legal and expert fees to navigate the CUP process and to address the appeals, and costs associated with carrying the property/business during the extended uncertainty (e.g., rent, loan interest, taxes, without corresponding income from alcohol sales). These costs were exacerbated by the protracted and irregular process; d) Non-Economic and Reputational Harm: Plaintiff suffered distress, embarrassment, and reputational harm from being unjustly portrayed as having obtained a permit improperly or from having a project that was "rightly denied" amid public controversy. The public nature of the Council's reversal and the insinuations of "trickery" or community harm have stigmatized Plaintiff and his business in the community. Plaintiff experienced the frustration and anxiety of being subjected to a biased and unlawful proceeding, causing emotional anguish.

70. Plaintiff is entitled to an award of reasonable attorney's fees and costs pursuant to 42 U.S.C. § 1988, because he has had to retain counsel to vindicate his civil rights in this action.

## VII.    DEMAND FOR RELIEF

WHEREFORE, Plaintiff respectfully prays that this Court enter judgment in his favor and against the City, and grant the following relief:

1. Declaratory Relief (28 U.S.C. §§ 2201–2202): Plaintiff seeks declaratory relief pursuant to 28 U.S.C. §§ 2201–2202 based on an actual case or controversy arising under the Fourteenth Amendment. Plaintiff does not ask this Court to reweigh land-use factors, review zoning discretion, or order issuance of a Conditional Use Permit. Instead, Plaintiff seeks a declaration that Defendants, acting through the City Council as the City's final policymaking authority, deprived Plaintiff of a constitutionally protected property interest through arbitrary, misleading, and ultra vires procedures that denied notice and a meaningful opportunity to be heard. As alleged, Defendants rescinded an approved entitlement without following mandatory procedures and relied on improper or undisclosed grounds, in violation of procedural due process. Plaintiff therefore seeks a declaration that Defendants' conduct violated the Fourteenth Amendment and that the challenged decision is constitutionally void to the extent it rests on the procedurally defective process alleged herein, in order to remedy the completed constitutional injury and prevent continued enforcement of an unlawful decision.

2. Equitable relief tailored to due process: Any equitable relief sought is strictly limited to remedying the completed procedural due-process violation alleged herein and does not require this Court to reweigh land-use factors, substitute its judgment for that of municipal officials, or order the issuance of a land-use entitlement. Such relief is limited to (i) vacatur of the challenged decision to the extent it rests upon constitutionally defective procedures, and/or (ii) prospective relief requiring the City, before any further deprivation of Plaintiff's protected property interest, to provide a constitutionally adequate process, including decision-making by an impartial tribunal, disclosure of the procedural posture and evidence relied upon, and issuance of findings sufficient to permit meaningful judicial review. Plaintiff

further seeks appropriate injunctive and equitable relief prohibiting Defendants from enforcing or relying upon the procedurally defective proceedings and decision challenged in this action, and requiring compliance with the requirements of procedural due process in any future adjudication affecting Plaintiff's vested rights. Any forward-looking relief sought is narrowly tailored to prevent the recurrence of the unconstitutional practices alleged and to ensure prospective compliance with the Fourteenth Amendment.

3. Compensatory damages: An award of compensatory damages in an amount to be proven at trial, to compensate Plaintiff for the economic losses and other injuries proximately caused by Defendant's due process violations, including lost business opportunities, reputational harm, emotional distress, and the impairment of constitutionally protected rights.

4. Attorneys' fees and costs: An award of reasonable attorneys' fees and litigation costs pursuant to 42 U.S.C. § 1988 and any other applicable authority.

5. Prejudgment interest: An award of prejudgment interest as permitted by law, to compensate Plaintiff for the loss of use of money caused by Defendant's unconstitutional conduct.

6. Such other and further relief as the court deems just and proper: Any additional legal or equitable relief the Court deems appropriate to fully redress the constitutional violations and deter future misconduct.

## VIII. DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial on all issues.

Dated: January 19, 2026

_Robert Tang_
Robert T. Tang
Attorney for Plaintiff, Fast Mart, Inc. D/B/A Fast Mart.